JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-mother, C.H., appeals the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, that granted permanent custody of her children, A.A., K.A., L.A., and R.G., to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS") and legal custody of two other children, Ra.G. and Ru.G., to a paternal[1]
aunt. For the reasons that follow, we reverse and remand.
 {¶ 2} The record reflects that appellant is the mother of six children, A.A., K.A., L.A., R.G., Ra.G., and Ru.G. T.A. is the father of A.A., K.A. and L.A., while RU.G. is the father of Ra.G. and Ru.G. The alleged father of R.G. is W.S. At the time CCDCFS filed its complaint for neglect and permanent custody in June 2003, the children ranged in age from 14 months to 14 years old. CCDCFS alleged that appellant was unable to provide adequate care for the children because of substance abuse problems and her children because of substance abuse problems and her inability to comply with recommendations for treatment. The same allegations were made of RU.G. As pertains to T.A., it was alleged that he demonstrated a lack of commitment to his children and was unable to provide adequate care for his children because of frequent incarcerations. A similar lack-of-commitment allegation was made against putative father W.S., but for failing to support, visit or communicate with his child.
 {¶ 3} The children were placed in temporary emergency shelter custody of CCDCFS and the court appointed attorney Anjanette Arabian guardian ad litem for the children. The court thereafter appointed counsel for the parents.
 {¶ 4} At a hearing held on April 22, 2004, appellant and T.A., the father of A.A., K.A., and L.A., entered admissions to an amended complaint. After hearing testimony regarding the allegations against RU.G. and W.S., the court adjudicated all the children neglected. The court journalized an entry to that effect on April 27, 2004 and included in that entry an order to continue its previous order of temporary custody.
 {¶ 5} The case proceeded to disposition on June 3, 2004. Appellant, father RU.G., and putative father W.S. were not present, although duly notified. Father T.A. was present with counsel. The court heard testimony from CCDCFS social worker, Yulanda Grayson, who documented the agency's recommendations to the parents for services and the parents' noncompliance or lack of follow-through with those recommendations. Additionally, she with those recommendations. Additionally, she testified as to the children's current foster placements and their adjustment to those placements.
 {¶ 6} The children's guardian ad litem, Anjanette Arabian, also testified. After giving a brief history of her involvement in the case, the guardian recommended that A.A., K.A., and L.A. be placed in the permanent custody of CCDCFS, while she recommended that Ra.G. and Ru.G. be placed in the legal custody of a paternal aunt. The court found in favor of CCDCFS and placed A.A., K.A., and L.A. in the permanent custody of CCDCFS and granted legal custody of Ra.G. and Ru.G. to the aunt.
 {¶ 7} Appellant is now before this court and assigns six errors for our review.
I.
 {¶ 8} In her first assignment of error, appellant contends that the trial court did not comply with Juv.R. 29(D) when it accepted her admission at the adjudicatory hearing. Before addressing the merits of this assigned error, we find it necessary to determine whether this issue is timely appealed under App.R. 4(A).
 {¶ 9} In general, an aggrieved party has thirty days from the time an adjudication order is entered to appeal that order when it is accompanied by a temporary order of disposition. In re Murray (1990),52 Ohio St.3d 155, syllabus.
 {¶ 10} "An adjudication by a juvenile court that a child is `neglected' or `dependent' * * * followed by a disposition awarding temporary custody to temporary custody to a public children services agency * * * constitutes a `final order' within the meaning of R.C. 2505.02
and is appealable to the court of appeals * * *." Id.; see, also, In reMichael A. (Mar. 21, 2002), Cuyahoga App. No. 79835, 2002 Ohio App. Lexis 1272.[2]
 {¶ 11} Under App.R. 4(A), a notice of appeal is timely if it is filed "within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in [Civ.R.] 58(B)." Thus, App.R. 4(A) contains a tolling provision that applies in civil cases, including juvenile cases,[3] when a judgment has not been properly served on a party according to Civ.R. 58(B).
 {¶ 12} Civ.R. 58(B) requires the court to endorse on its judgment "a direction to the clerk to serve upon all parties * * * notice of the judgment and its date of entry upon the journal." The clerk must then serve the parties within three days of entering judgment upon the journal and note the service in the appearance docket. "The thirty-day time limit for docket. "The thirty-day time limit for filing the notice of appeal does not begin to run until the later of (1) entry of the judgment or order appealed if the notice mandated by Civ.R. 58(B) is served within three days of the entry of the judgment; or (2) service of the notice of judgment and its date of entry if service is not made on the party within the three-day period in Civ.R. 58(B)." Whitehall ex rel. Fennessy v.Bambi Motel, Inc. (1998), 131 Ohio App.3d 734, 741.
 {¶ 13} In this case, the trial court's order adjudicating appellant's children as neglected and continuing its previous order placing them in the temporary custody of CCDCFS was journalized on April 27, 2004. UnderIn re Murray, this order was capable of immediate review as long as the parties were served notice of this judgment in accordance with Civ.R. 58(B) and thereafter satisfied the time requirements for the filing of an appeal under App.R. 4(A). It is the service of notice, and adequate proof thereof, and not actual notice that is required by Civ.R. 58(B). See Inre L.B., Cuyahoga App. Nos. 79370 79942, 2002-Ohio-3767, at ¶ 11. The record in this case, however, does not reflect that the parties, other than CCDCFS, were served as required by Civ.R. 58(B).
 {¶ 14} It is true that the April 27th order includes language directing the clerk to "serve upon the parties notice of this judgment and it's (sic) date upon the journal." The court's appearance docket reflects the journalization of this order on April 27, 2004. There is no notation, April 27, 2004. There is no notation, however, on the docket, or anywhere within the record for that matter, that appellant was served as is required by this rule. Indeed, the docket entry reads as follows:
 {¶ 15} "J.E. dated 4/22/04 journalized on 4/27/04 MM. Vol. 17 Pg. 7356-7. Copy to CCDCFS." {¶ 16} No where in this entry is there any indication that the court served appellant with a copy of this judgment.
 {¶ 17} "The opportunity to file a timely appeal pursuant to App.R. 4(A) is rendered meaningless when reasonable notice of an appealable order is not given." Moldovan v. Cuyahoga Cty. Welfare Dept. (1986),25 Ohio St.3d 293, 295. By promulgating Civ.R. 58(B), the Ohio Supreme Court required trial courts and court clerks to provide notice of a judgment by service on the parties and to note that service on the appearance docket. When a court fails to make a notation of service on the appearance docket, despite including language in its order consistent with a court's directions to serve the parties, the time for filing a notice of appeal has not begun to run and an appeal from such an order is considered timely. See In re Aldridge, 4th Dist. No. 02CA2661, 2002-Ohio-5988, at ¶ 9-14; see, also, In re Bays, 2nd Dist. Nos. 2002-CA-52 56, 2003-Ohio-1256, at ¶ 5; In re Raypole, 12th Dist. Nos. CA2002-01-001 002, 2003-Ohio-1066, at ¶ 26-28; In re Grace
(Mar. 20, 2002), 5th Dist. No. 01CA85, 2002 Ohio App. Lexis 1474. Service of an adjudication order takes on greater significance, where, as here, the where, as here, the order continuing temporary custody was made by journal entry and not also pronounced at the hearing.
 {¶ 18} Although we find that the time for appealing the April 27, 2004 adjudication order has been tolled because there is no notation on the appearance docket that appellant was served notice of the adjudication order, CCDCFS, nonetheless, complains that we are unable to review this order because appellant failed to include the order of adjudication in her notice of appeal as is required by App.R. 3(D). In support of this argument, CCDCFS relies on Bellecourt v. Cleveland, 152 Ohio App.3d 687,2003-Ohio-2468, reversed on other grounds, 104 Ohio St.3d 439,2004-Ohio-6551, wherein this court restated its position of "declin[ing] jurisdiction to review a judgment or order that is not designated in the notice of appeal." Id. ¶ 38-40. We are unpersuaded.
App.R. 3(D) governs the content of the notice of appeal and provides, in part, that the notice of appeal "shall designate the judgment, order or part thereof appealed from." To the extent that members of this court, and other courts, have found that the failure to include such a designation is a jurisdictional defect, we disagree.
 {¶ 19} App.R. 3(A) governs the filing of the notice of appeal and provides, in relevant part:
 {¶ 20} "Failure of an appellant to take any step other than the timelyfiling of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appeals deems appropriate, which may include dismissal of the appeal." (Emphasis added.)
 {¶ 21} Thus, it is the timely filing of the notice of appeal that is a jurisdictional prerequisite to this court's authority, not the contents
of that notice. Indeed, a reviewing court is free to take whatever action it believes is appropriate, including dismissal of the appeal when a notice of appeal is defective under App.R. 3. When it does so, however, it is not because of any jurisdictional impediment, but as an exercise of its discretion under this rule. See Transamerica Ins. Co. v. Nolan
(1995), 72 Ohio St.3d 320, 322-323; see, also, In re S.G. M.G.,
Cuyahoga App. No. 84228, 2005-Ohio-1163, at ¶ 17; Horen v. SummitHomes, 6th Dist. No. WD-04-001, 2004-Ohio-2218, at ¶ 20; McMonigalExcavating Concrete, Inc. v. Riley, 12th Dist. No. CA2003-07-075, 2004-Ohio-1508, at ¶ 12; cf. Shaffer v. OhioHealth Corp., 10th Dist. No. 04AP-236, 2004-Ohio-6523, at ¶ 12 (unnecessary to separately identify interlocutory order in notice of appeal because interlocutory orders merge into final order thereby making all previously entered orders subject to review on appeal).
 {¶ 22} App.R. 3 must be construed in light of the purpose of a notice of appeal, which is to apprise the opposite party of the taking of an appeal and "`* * * [i]f this is done beyond [the] danger of reasonable misunderstanding, the purpose of the notice of appeal is accomplished.'"Maritime Mfrs., Inc. v. Hi-Skipper Marina (1982), 70 Ohio St.2d 257, 259, citing Capital Loan Sav. Co. v. Biery (1938), 134 Ohio St. 333, 339
and Co. v. Biery (1938), 134 Ohio St. 333, 339 and quoting Couk v. OceanAcc. Guar. Corp., Ltd. (1941), 138 Ohio St. 110, 116; see, also, Parksv. Baltimore Ohio RR. (1991), 77 Ohio App.3d 426, 428.
 {¶ 23} We cannot say that CCDCFS was surprised or misled by the notice of appeal filed by appellant. Appellant filed the notice of appeal without the assistance of an attorney. Indeed, the notice of appeal is a preprinted form supplied by either the juvenile court or CCDCFS itself[4]
and is intended for use by pro se litigants. Appellant completed the form by filling in blanks for her name, address and other identifying information. It also included check-the-box options, which did not include an option for appealing the order of adjudication and temporary disposition. Instead, her only choice, on the pre-printed form, was to appeal the order of permanent or temporary custody. Also included in the notice of appeal was an affidavit, likewise completed by filling in the blanks, which contained a pre-printed statement referencing the grant of permanent custody.
 {¶ 24} Thus, what we have in this case is an appellant, without the benefit of counsel, using a pre-printed form supplied by either the court or CCDCFS that severely circumscribes her already limited knowledge of the appeal process. Under these facts, and given that the law of this state favors deciding appeals on their merits, we are unwilling to find that are unwilling to find that CCDCFS was surprised or misled by appellant's appeal of the order adjudicating her children as neglected. Accord In re S.G. M.G., 2005-Ohio-1163, at ¶ 19.
 {¶ 25} CCDCFS, nonetheless, maintains that appellant failed to challenge the adjudication order in the trial court despite being present for two subsequent hearings. It argues, therefore, that appellant waived the issue for review on appeal.
 {¶ 26} We recognize that appellant did not object at any point during the proceedings below about the court's failure to comply with Juv.R. 29(D). It is true that, in general, a reviewing court will not consider issues that an appellant failed to first raise in the trial court. SeeState ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 81. If the error is apparent on the face of the record and it is prejudicial to the appellant, however, application of the plain error doctrine will permit correction of judicial proceedings. Reichert v. Ingersoll (1985),18 Ohio St.3d 220, 223. The doctrine is applicable in civil cases only in the extremely rare case where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process."Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122-123.
 {¶ 27} The termination of parental rights is "the family law equivalent of the death penalty." In re Hayes (1997), 79 Ohio St.3d 46, 48; see, also, In re Murray, 52 Ohio St.3d at 156 (stating that a parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her "essential" and "basic civil right" to raise his or her children).
 {¶ 28} As pertains to termination of parental rights cases, a trial court's failure to comply with Juv.R. 29(D) has been found to constitute plain error. See In re Elliot, 4th Dist. Nos. 03CA65 66, 2004-Ohio-2770, at ¶ 15; In re Aldridge, 2002-Ohio-5988 at ¶ 16. Unlike this court's decision in In re M.F. Cuyahoga App. No. 82018, 2003-Ohio-4807, we are unable to conclude that appellant waived this issue for review.
 {¶ 29} Because we conclude that there is no impediment, jurisdictional or otherwise,[5] to this court's review of the April 27, 2004 adjudication order, we now consider whether the trial court erred when it accepted appellant's admission, as asserted in her first assignment of error.
 {¶ 30} Juv.R. 29(D) governs the procedure for accepting an admission and provides, in relevant part:
 {¶ 31} "The court * * * shall not accept an admission without addressing the party personally and determining both of the following:
 {¶ 32} "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 {¶ 33} "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent and to introduce evidence at the adjudicatory hearing."
 {¶ 34} Thus, a trial court must carefully inquire as to whether the admission is voluntarily, intelligently and knowingly entered. In reBeechler (1996), 115 Ohio App.3d 567, 571-572. Although strict compliance with this rule is not constitutionally mandated, the record must demonstrate that the court substantially complied with the rule's nonconstitutional requirements. A court's failure to so comply constitutes prejudicial error, requiring reversal of the adjudication order. Id., see, also, In re Onion (1998), 128 Ohio App.3d 498, 503, citing State v. Ballard (1981), 66 Ohio St.2d 473, 476.
 {¶ 35} Reviewing the record in this case, we cannot conclude that the trial court sufficiently complied with the requirements set forth in Juv.R. 29(D). After CCDCFS moved to amend its complaint, appellant's counsel advised the court that appellant was prepared to enter an admission to the complaint as amended. Addressing appellant and T.A., the court stated:
 {¶ 36} "Do each of you understand that by admitting to the allegations in the amended complaint and consenting to the finding of neglect, if I, in fact, find the children to be neglected, that you are waiving the following you are waiving the following rights: First of all, you are waiving your right to have [CCDCFS] prove those allegations by clear and convincing evidence at a trial. And at the trial, you and your attorneys would have the right to cross-examine any and all witnesses who would testify in favor of [CCDCFS's] position and in an effort to establish neglect of the children, you are also waiving your right to have witnesses testify against the position of [CCDCFS]; do each of you understand that?"
 {¶ 37} After appellant answered affirmatively, the court informed appellant of the consequences of her admission and inquired of her satisfaction with her attorney. There was no further colloquy between the court and appellant regarding the rights she was waiving. The court thereafter accepted her admission. Absent from this colloquy, however, is any mention of the constitutional right to remain silent.
 {¶ 38} An admission under Juv.R. 29(D) has been analogized to a guilty plea taken under Crim.R. 11(C). See In re Christopher R. (1995),101 Ohio App.3d 245, 247; see, also, In re Etter (1998),134 Ohio App.3d 484, 489. In the adult criminal context, the failure of a trial court to inform a defendant that he or she is waiving one of the constitutional rights, such as the right to remain silent, constitutes prejudicial error. State v. Ballard, 66 Ohio St.2d at 478. Such an omission in the juvenile context similarly has been found to constitute prejudicial error. See In re Onion, 128 Ohio App.3d at 503; see, also, In re Fulk (1999), 132 Ohio App.3d 470, Ohio App.3d 470, 472.
 {¶ 39} "[A] guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner at the time of entering his guilty plea of * * * his privilege against self-incrimination * * *." State v.Ballard, 66 Ohio St.2d at 478. Although rote recitation of the right is not required, the record must demonstrate that the court "explained or referred to the right in a manner reasonably intelligible to that defendant." Id. at 480.
 {¶ 40} Here, as in In re Onion,[6] the court did not explain or refer to the right to remain silent in any manner. Appellant's admission, therefore, cannot be considered knowingly and voluntarily entered.
 {¶ 41} CCDCFS urges this court to find In re Onion distinguishable, however, because the admission in that case involved a proceeding for delinquency rather than for neglect as in the instant case. It argues that constitutional rights are of paramount importance in a delinquency proceeding because an important liberty interest is at stake.
 {¶ 42} This court, however, recognized in In the Matter of N.D.,
Cuyahoga App. No. 80559, 2002-Ohio-3791, that "these protections apply as equally to parents as they do to juveniles" and "the failure of a lower court to substantially comply with the requirements of Juv.R. 29 requirements of Juv.R. 29 constitutes prejudicial error that requires a reversal of the adjudication in order to permit the party to plead anew." Id. at ¶ 23.
 {¶ 43} Interestingly, N.D. seems to imply that the failure to advise a parent of his or her Fifth Amendment rights is still "substantial compliance," which, in context, reads "close enough for government work." We elect not to follow that part of the holding, fearing future argument regarding "how many constitutional rights can be eliminated in the colloquy before there is no longer substantial compliance?" Clearly, substantial compliance requires at minimum that the court mention, even if inartfully, the specifically enumerated constitutional rights set forth in Juv.R. 29(D). A wholesale failure to even mention one of those rights may be "close enough for government work" but is not "substantial compliance."
 {¶ 44} Moreover, we see no reason for ascribing less importance to a constitutional right because of the interest at stake. Even if there was a justifiable reason for doing so, we stated earlier in this opinion that the loss of parental rights is akin to the death penalty in a criminal case. Indeed, the loss of parental rights in a neglect or dependency proceeding is as important as the liberty interest at stake in a delinquency proceeding. Juv.R. 29(D) makes no such distinction and neither will we. See In re Etter, 134 Ohio App.3d at 489; In re JeremyN., Cuyahoga App. No. 79508, 2002-Ohio-3897, at ¶ 12-13; see, also, Inre Borntreger, 11th Dist. Dist. No. 2001-G-2379, 2002-Ohio-6468, at ¶ 49.
 {¶ 45} We conclude that the trial court erred when it accepted appellant's admission without first informing her that, in exchange for that admission, she would be waiving her right to remain silent as is required by Juv.R. 29(D)(2). Because of this lack of compliance, appellant's admission to the complaint as amended was not voluntarily and knowingly entered.
 {¶ 46} Appellant's first assignment of error is well taken and is sustained.
 II. {¶ 47} Appellant asserts in her remaining assignments of error that the court erred when it (1) failed to comply with Juv.R. 34; (2) failed to give appellant proper notice of the dispositional hearing; (3) denied a continuance of the dispositional hearing; (4) granted permanent custody without considering the wishes of the children; and (5) did not comply with R.C. 2151.414(B). Because of our disposition of her first assignment of error, we need not address these assigned errors. See App.R. 12(A)(1)(c).
 III. Conclusion {¶ 48} The order of the juvenile court adjudicating A.A., K.A., L.A., R.G., Ru.G., and Ra.G. as neglected children is hereby reversed. Without an order of adjudication, the dispositional awards of permanent custody of A.A., K.A., L.A., and R.G. to CCDCFS and legal custody of Ra. G. and Ru.G. to a paternal aunt cannot stand and are, likewise, reversed. This case is remanded for further proceedings consistent with this opinion. further proceedings consistent with this opinion.
Reversed and remanded.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal. Itis ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., Concurs. Calabrese, Jr., J., Dissents with separate dissenting opinion.
[1] We note that the order that is the subject of this appeal indicates that legal custody was awarded to a maternal aunt. The transcript of the hearing, however, indicates that the aunt is a paternal, not maternal, aunt.
[2] We note that appellant relies on this court's decision in In reI.M., Cuyahoga App. Nos. 82669 82695, 2003-Ohio-7069, for the proposition that an order adjudicating a child neglected or dependent is a final order capable of immediate review. Id. at ¶ 14. By the I.M.
court's reference to In re Murray, 52 Ohio St.3d 155, it is apparent that the adjudication order becomes final when it is accompanied by an order of disposition, as it was in In re I.M. See In re I.M., 2003-Ohio-7069, at ¶ 6, fn.1.
[3] See In re Anderson (2001), 92 Ohio St.3d 63, where the Ohio Supreme Court held that juvenile court judgment entries are subject to the Civ.R. 58(B) requirements concerning service and recording of service in the appearance docket.
[4] Within the notice of appeal is the pre-printed name and address of CCDCFS, directing attention of the notice to its legal department.
[5] CCDCFS also complains that this court cannot consider appellant's first assignment of error, or any other error that relies on the transcripts in the record, because the certification page of the transcripts are unsigned and, therefore, not certified in compliance with App.R. 9(B). As directed by the Supreme Court of Ohio in Farmers BankingCo. v. Hinkle (1976), 46 Ohio St.2d 374, we will not construe App.R. 9(B) in a hypertechnical manner. Id at 377. We are reluctant to conclude that the lack of a signature on the certification page is fatal under App.R. 9(B), especially when all other requirements for certification are satisfied. Nonetheless, we directed the court reporter to take the necessary steps to correct this omission. See Motion No. 369499.
[6] 128 Ohio App.3d 498.
 DISSENTING OPINION